# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TUNGSTEN HEAVY POWDER AND PARTS, INC., | No. 4:17-CV-01948 |
| Plaintiff. | (Judge Brann) |
| v. | |
| GLOBAL TUNGSTEN & POWDERS CORPORATION, | |
| Defendants. | |

## MEMORANDUM OPINION

### JULY 5, 2018

Defendant Global Tungsten & Powders Corporation has filed a Motion to Dismiss Plaintiff Tungsten Heavy Powder and Parts, Inc.'s Amended Complaint. For the following reasons, this Motion will be denied.

## I. BACKGROUND[1]

### A. The Parties

Plaintiff Tungsten Heavy Powder and Parts, Inc. ("Plaintiff" or "THPP") is a leading manufacturer of tungsten powder and tungsten-based products.[2] Such products are essential materials in a variety of commercial manufacturing applications and industries such as the defense and aerospace, automotive, and

---

[1] When considering a motion to dismiss, a court assumes the truth of all allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this section, then, is taken entirely from Plaintiff's Amended Complaint, ECF No. 13, and is presumed true for present purposes.

[2] Am. Compl. (ECF No. 13) ¶ 2.

healthcare industries.³ Plaintiff is located in San Diego, California, and avers a California citizenship.⁴ Defendant Global Tungsten & Powders Corporation ("Defendant GTP") manufactures specialty powders, including tungsten powder, and is a direct competitor of Plaintiff.⁵ Defendant GTP is incorporated in Pennsylvania and claims citizenship of that state.⁶ This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1332 pursuant to diversity of citizenship.⁷

### B. Factual Background

Plaintiff alleges that Defendant GTP has recently orchestrated a systemic campaign to destroy its reputation in the tungsten marketplace, ruin its relationsip with customers and prospective customers, and improperly obtain customer contracts and orders that otherwise would have gone to it.⁸ In this campaign, Defendant GTP and its management have coordinated with its sales representatives and others to spread false statements about Plaintiff in a variety of important industry settings.⁹ Customers of Plaintiff have been told that it falsely represents the origin of its products and violates federal laws in the importation of materials.¹⁰

---

3   *Id.*
4   *Id.* ¶¶ 6 & 9.
5   *Id.*
6   *Id.* ¶ 10.
7   *Id.* ¶ 8.
8   Am. Compl. ¶ 20.
9   *Id.* ¶ 21.
10  *Id.* ¶ 22.

Defendant GTP has further indicated to tungsten customers that it intends to report Plaintiff to law enforcement officials.[11]

False statements specifically include the representation that, despite its pledge to customers that all materials are made in the United States, Plaintiff is importing materials from the People's Republic of China.[12] Furthermore, Defendant GTP has also claimed that Plaintiff is having its materials inspected in Mexico, in violation of the federal International Traffic in Arms Regulations ("ITAR").[13] Defendant GTP continues to make these false statements to Plaintiff's current and prospective customers.[14] Most recently, on or about October 10, 2017, Defendant GTP's Vice President of Sales and Marketing communicated these statements to a current customer of Plaintiff at an industry trade show.[15] GTP representatives made similar statements to Plaintiff's other current and prospective customers at the same trade show and elsewhere.[16] Plaintiff alleges that this campaign by Defendants has caused and continues to cause serious and irreparable harm through the loss of both current and prospective customers.[17] Plaintiff indeed

---

[11] *Id.*

[12] *Id.* ¶ 23.

[13] Am. Compl. ¶ 24.

[14] *Id.* ¶ 26.

[15] *Id.* ¶ 27.

[16] *Id.* ¶ 28.

[17] *Id.* ¶¶ 32–35.

stands to lose both a $ 20 million per year contract and a $ 6 million per year contract.[18]

**C. Procedural History**

Based on the above allegations and against the above parties, Plaintiff filed a Complaint in this Court on October 23, 2017.[19] In this Complaint, Plaintiff alleged four causes of action: (1) defamation, (2) intentional interference with business relations, (3) unfair competition, and (4) civil conspiracy.[20] On February 1, 2018, I granted Defendant GTP's motion to dismiss without prejudice.[21] This dismissal was premised on the presence of John Doe Defendants who, because of unknown citizenship, prevented this Court from exercising subject matter jurisdiction.[22] Plaintiff thereafter filed an Amended Complaint on February 22, 2018 omitting both the John Doe Defendants and a corresponding civil conspiracy claim.[23] Defendant GTP has now moved to dismiss Counts II (intentional interference with business relations) and III (unfair competition) of the Amended Complaint on the merits.[24] Following full briefing, this matter is ripe for my determination.[25]

---

[18] Am. Compl. ¶ 56.
[19] ECF No. 1.
[20] *Id.*
[21] ECF No. 11.
[22] *Id.*
[23] ECF No. 13.
[24] ECF No. 14.
[25] ECF Nos. 15–17.

## II. DISCUSSION

### A. Legal Standard

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[26] a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party;[27] the court does not, however, assume the truth of any of the complaint's legal conclusions.[28] If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[29]

### B. Whether Plaintiff Has Stated a Claim for Intentional Interference with Business Relations

In its Motion, Defendant GTP first moves to dismiss Count II of Plaintiff's Amended Complaint, or intentional interference with business relations. Intentional interference with existing or prospective contractual relations requires four elements under Pennsylvania law: (1) an existing or prospective contract between the plaintiff and a third party; (2) a purposeful act by the defendant taken with the specific intent to harm the existing relation or prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of

---

[26] Federal Rule of Civil Procedure 12(b)(6).

[27] *Phillips v. County Of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[29] *Id.*

the defendant; and (4) actual legal damage because of the defendant's conduct.[30] Defendant GTP does not contest that Plaintiff has adequately pled elements two and three of this claim as contained above. Rather, it argues that Plaintiff has failed to plead the existence of a contractual or prospective contractual relationship whose loss inflicted actual legal damages.[31] I respectfully disagree.

First, I note Defendant GTP argues that this claim should be dismissed because Plaintiff has failed to identify a third party with whom a contractual relationship existed and whose interference resulted in actual damages.[32] However, as advanced by Plaintiff, this argument is necessarily limited to the existence of current business relationships and not prospective relationships.[33] Indeed, a prospective contract or business relationship requires merely a reasonable probability of a contract-that is, "something less than a contractual right, but something more than a mere hope."[34] Put another way, a plaintiff in a prospective interference case need only allege that there was a reasonable likelihood that the contract would have materialized absent the defendant's actions.[35] A plaintiff is

---

[30] *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 288 (Pa. Super. Ct. 2010).

[31] ECF No. 15, at 3–5; ECF No. 17, at 3–4.

[32] ECF No. 15, at 3-4.

[33] ECF No. 16, at 7.

[34] *Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)); s*ee also Glenn v. Point Park College*, 272 A.2d 895, 898–99 (1971).

[35] *Devon Robotics v. Deviedma*, No. 09-3552, 2009 WL 4362822, at *7 (E.D. Pa. Nov. 30, 2009) (citing *Glenn v. Point Park Coll.*, 272 A.2d 895, 898–99 (Pa. 1971)).

not, however, required to identify a potential contractual partner by name.[36] Viewing the Amended Complaint in the light most favorable, Plaintiff meets this threshold. Plaintiff specifically alleges that, based on the purposeful and unprivileged act of Defendant GTP in misrepresenting the origins of its products and the potential violation of federal laws, current and prospective customers have inquired about these claims and expressed concerns about entering into contracts and otherwise continuing business relations.[37] The first element of an intentional interference with a prospective contractual relationship claim is therefore satisfied.

Second, I find that the Amended Complaint adequately alleges actual legal damages resulting from this campaign of misinformation by Defendant GTP. To establish the fourth element of a claim for intentional interference with business relations, a plaintiff must prove "the occasioning of actual legal damage as a result of the defendant's conduct."[38] Actual legal damage is "pecuniary loss flowing from the alleged interference with contract" and does not include recovery solely for harm to business reputation.[39] The measurement of such damages need not be

---

[36] *Synthes (U.S.A.) v. Globus Medical, Inc.*, No. 04-1235, 2005 WL 2233441, at *7 (E.D.Pa. Sept. 14, 2005)(collecting cases).

[37] Am. Compl. ¶¶ 29, 56–57.

[38] *Strickland v. Univ. of Scranton,* 700 A.2d 979, 985 (Pa.Super.Ct.1997) (citations omitted).

[39] *Shiner v. Moriarty,* 706 A.2d 1228, 1239 (Pa.Super.Ct. 1998) (citing *Pelagatti v. Cohen,* 536 A.2d 1337, 1343 (1987)).

a precise calculation and may be an estimate.[40] Here, Plaintiff avers that, as a direct result of Defendant GTP's purposeful actions and interference with prospective contractual relations, it has lost both prospective and current customers including the loss of contracts worth 20 and 6 million dollars per year, respectively.[41] This averment of lost prospective customers is bolstered by the identity of Plaintiff's customers as government contractors and the military.[42] It is a reasonable inference to make at this stage of the litigation that such customers would be deterred by Defendant GTP's alleged misinformation campaign. Therefore, while Defendant GTP argues that the damages alleged relate merely to reputational harm, I am satisfied that Plaintiff's allegations of lost and jeopardized customer orders go beyond mere reputational harm. Defendant GTP's motion is therefore denied as to this claim.

### C. Whether Plaintiff Has Stated a Claim for Unfair Competition

Defendant GTP next moves to dismiss Count III of the Amended Complaint, or Plaintiff's unfair competition claim. Like both Counts I and II, this claim is premised on the alleged misinformation campaign orchestrated by Defendant GTP. Defendant GTP therefore argues both that this count is duplicative and that the

---

[40] *Judge Technical Serv., Inc. v. Clancy,* 813 A.2d 879, 885 (Pa.Super.Ct. 2002).

[41] Am. Compl. ¶ 56.

[42] *Id.* ¶ 12.

conduct within the Amended Complaint is outside the breadth of this Pennsylvania common law claim.[43]

Unfair competition under Pennsylvania common law is recognized under the Restatement (Third) of Unfair Competition.[44] While this tort is generally characterized by the act of "passing off" one's goods as another, the Supreme Court of Pennsylvania has held that other types of conduct can constitute unfair competition actionable at common law.[45] Indeed, "Pennsylvania courts have also recognized unfair competition 'where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information.' "[46] Most pertinently here, "Pennsylvania courts have recognized a cause of action for . . . unfair competition where there is evidence of, among other things, . . . tortious interference with contract."[47] Here, because Plaintiff has sufficiently alleged its intentional

---

[43] ECF No. 15, at 6–7; ECF No. 17, at 4–5.

[44] *See, e.g., Medical Diagnostic Laboratories, LLC v. Independence Blue Cross*, No. 16-5855, 2017 WL 3776619, at *18 (E.D.Pa. Aug. 30, 2017)(collecting cases); *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 14-853, 2017 WL 2126320, at *10 (M.D.Pa. 2017).

[45] *Scranton Products, Inc.*, 2017 WL 2126320, at *10 (quoting *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995)(internal citations omitted)).

[46] *Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc.*, No. 10-2513, 2013 WL 1497946, at * 12 (M.D.Pa. Apr. 10, 2013)(quoting Synthes (U.S.A.) v. Globus Med. Inc., No. 04-1235, 2005 WL 223341, at *8 (E.D.Pa. Sept. 14, 2005)).

[47] *See Medical Diagnostic Laboratories, LLC v. Independence Blue Cross*, No. 16-5855, 2017 WL 3776619, at *9 (E.D.Pa. Aug. 30, 2017)(quoting *Synthes (U.S.A.) v. Globus Med., Inc.*, No 04-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005)).

interference with prospective contractual relationships claim, this Court will also allow it to proceed on its unfair competition claim.

## III. CONCLUSION

Based on the above reasoning, Defendant Global Tungsten & Powders Corporation's Motion to Dismiss the Amended Complaint is denied. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant shall answer Plaintiff's Amended Complaint within 14 days of the date of this Order.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge